Harold LOUIS, Plaintiff,

v.

Benjamin WARD, Individually and in his official capacity as Director of New York State Department of Corrections, and Roy F. Bombard, Individually and in his official capacity as Superintendent of Green Haven Correctional Facility, Defendants.

No. 76 Civil 1315.

United States District Court,
S. D. New York.

Jan. 19, 1978.

Harold Louis, pro se.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for defendants; Ilene P. Karpf, Deputy Asst. Atty. Gen., New York City, Robert J. Schack, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff alleges that defendant prison officials at Green Haven Correctional Facility did not permit plaintiff's girlfriend and his daughter to visit him and deliver a package to him on January 24, 1976. As a result, he further alleges that his girlfriend and daughter waited four hours in "sub-zero" weather for a return bus to New York City. Plaintiff claims that the acts of the defendants constituted cruel and unusual punishment and denied him due process and equal protection of the laws. Plaintiff seeks a declaration that defendant's acts and policies violate the Constitution and an injunction and damages. Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Defendants' motion must be granted since plaintiff's complaint, even when read liberally—as this Court must [1]—, fails to allege facts which constitute a constitutional deprivation cognizable under section 1983 of Title 42 of the United States Code. To plead sufficiently an instance of cruel and unusual punishment, plaintiff must allege facts that, if true, would demonstrate a deliberate indifference to basic human needs,[2] or deliberate infliction of human suffering.[3] As stated by then-District Judge Mansfield, "The essential yardstick for our purposes is whether the prison conditions go beyond what is necessary for protection of the public against the inmates and sink into the dismal area of man's inhumanity to man. *Sostre v. McGinnis*, 442 F.2d 178 (2d Cir. 1971)."[4] Plaintiff's complaint falls far short of this. Plaintiff alleges that he was not permitted to meet with his girlfriend or daughter because prisoners at Green Haven are permitted only two weekend visits a month. He further complains that there was no waiting room for persons denied access to prisoners and that prisoners often are not told when visitors arrive and thus wait unnecessarily for the visit to begin. Finally, he alleges that Green Haven is the only prison in New York that limits the number of times a prisoner may meet with his family.

1. *See Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam).

2. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (deliberate indifference to prisoner's serious medical needs); *Williams v. Vincent*, 508 F.2d 541, 543–44 (2d Cir. 1974) (same).

3. *See Johnson v. Glick*, 481 F.2d 1028, 1031 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 32 (1973).

4. *Rhem v. McGrath*, 326 F.Supp. 681, 689 (S.D.N.Y.1971).

Defendants do not dispute the facts alleged by the plaintiff. Rather, they put forth the prison's visitation policy and argue that it does not offend the Constitution. At the time of the alleged acts Green Haven Correctional Facility permitted inmates visitors twelve times per month; of these, two visits a month could occur on the weekend.[5] The regulations at Green Haven were adopted pursuant to Administrative Bulletin # 58 of the New York State Department of Correctional Services issued on May 17, 1972, which left to the discretion of each institution's superintendent the length and number of visits, provided that visits would "be limited only to the extent necessary to accommodate all visitors." Bulletin # 58 also required that screen barriers in visiting areas be eliminated, thereby permitting contact visits.

The procedures adopted at Green Haven do not in any way evidence deliberate indifference to the needs of the prisoners. On the contrary, they evidence a fair attempt to provide visiting rights to the institution's prisoners while maintaining prison order and security. In fact, just one month before the alleged incident Green Haven increased allowed monthly visits from eight to twelve.[6] Plaintiff's complaint is wholly insufficient in alleging facts that demonstrate invidious state action constituting cruel and unusual punishment. Clearly some limitations may be placed on visits;[7] and the promulgation of visiting regulations is a matter properly left to the competence and discretion of prison officials.[8] Whatever discomfort plaintiff's visitors may have experienced, the denial of the visit did not subject plaintiff to cruel and unusual punishment.

The complaint is similarly insufficient in alleging a violation of due process or equal protection. There are simply no allegations that plaintiff was treated arbitrarily or in a discriminatory manner. While plaintiff alleges that "the institution takes it's [sic] time to call a prisoner for a visit which comes at 9: a. m. and the prisoner does not get to see his visit till 1 or 2 p. m.," the complaint contains no concrete instances or examples of such practices. Thus these claims are also insufficient and must be dismissed.[9]

The cases cited by the plaintiff are clearly distinguishable. They involved either prison conditions that shocked the court's conscience or visitation privileges afforded pretrial detainees. In the latter cases, contact visits were not permitted.[10] Judge Lasker's decision in *Rhem v. Malcolm* is particularly instructive because there the court contrasted the privileges granted pretrial detainees—found to be unconstitutional—with those prevailing in New York State prisons.[11]

In sum, the prison's policies evidence no constitutional infirmities, and plaintiff's complaint is insufficient as a matter of law. The complaint is dismissed.

5. The affidavit furnished by the Deputy Assistant Attorney General incorrectly states the visitation policy of Green Haven Correctional Facility.

6. The number of visits permitted per month was increased again on September 17, 1976 to fifteen, four of which could occur on the weekend. This limit is presently in effect.

7. *See Pell v. Procunier*, 417 U.S. 817, 826, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974).

8. *See McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir.), *cert. denied*, 423 U.S. 859, 96 S.Ct. 114, 4 L.Ed.2d 86 (1975).

9. *See Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977); *Koch v. Yunich*, 533 F.2d 80, 85–86 (2d Cir. 1976); *Morgan v. Sylvester*, 125 F.Supp. 380, 386–87 (S.D.N.Y.1954), *aff'd*, 220 F.2d 758 (2d Cir.) (per curiam), *cert. denied*, 350 U.S. 867, 76 S.Ct. 112, 100 L.Ed. 768 (1955).

10. *See, e. g., Rhem v. Malcolm*, 371 F.Supp. 594, 625–26 (S.D.N.Y.), *aff'd*, 507 F.2d 333 (2d Cir. 1974); *Brenneman v. Madigan*, 343 F.Supp. 128, 140–41 (N.D.Cal.1972).

11. *See* 371 F.Supp. at 606.