Robert MARCIANO, Plaintiff,

v.

Thomas A. COUGHLIN III, Clark K. Wilson, Kenneth Dunham, Roland Bertrand, Martha Stinchomb, William Barhold, George Graves, and Edward Harris, Defendants.

No. 80 C 2659.

United States District Court,
E. D. New York.

April 6, 1981.

Robert Marciano, pro se.

Robert Abrams, Atty. Gen., New York City (Richard S. Lurye, Asst. Atty. Gen., New York City, of counsel), for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff, a state prisoner, brought this action under 42 U.S.C. § 1983 for injunctive relief from the refusal of the Temporary Release Committee of Arthur Kill Correctional Facility to grant him access to the work release or furlough programs and from the Committee's allegedly improper

methods of operation. Defendants have moved to dismiss the complaint for failure to state a claim on which relief can be granted. Since matters outside the pleadings have been presented, the court pursuant to Rule 12(b) of the Federal Rules of Civil Procedure treats this motion as one for summary judgment as provided in Rule 56. Plaintiff thereafter cross-moved for summary judgment striking the answer and granting the relief asked in the complaint.

Under New York Correction Law §§ 851–61 (McKinney Supp.1980) the New York State Legislature has established a program by which qualifying inmates are released for short periods in order to pursue occupational, personal, educational or other endeavors. The program operates under regulations promulgated by the Commissioner of Correction, defendant Coughlin. Pursuant to Correction Department Directive # 7001 of April 7, 1980, "Selection Procedures for Temporary Release Programs", inmates who score more than 30 points on a scale developed by the Vera Institute of Justice may appear before the institution's Temporary Release Committee for evaluation. That committee consists of a chairman and two other members drawn from a list nominated by the Superintendent and approved by the Commissioner. While the Directive indicates that the total number of members is to be kept small, Arthur Kill has been authorized by the Commissioner to use many additional staff members as committee members or alternates.

The Committee evaluates the inmates who appear before it to determine whether release is "consistent with the safety of the community and the welfare of the applicant, and is consistent with the rules and regulations of the department...." New York Corrections Law § 855(4) (McKinney Supp.1980). Applicants are allowed to appear before the committee.

Plaintiff is an inmate at the Arthur Kill Correctional Facility currently serving an indeterminate term of imprisonment for a robbery committed with a toy gun, while he was on parole from a previous commitment for robbery. On September 11, 1980, plaintiff, having attained 31 points on the Vera scale, was interviewed as a potential candidate for temporary release. His panel consisted of defendants Barhold, co-chairperson of the Arthur Kill Temporary Release Committee, Graves, a parole officer, and Harris, a correctional sergeant at the institution. The committee denied the request for temporary release on the ground that plaintiff was a threat to the safety of the community and recommended that he not reapply.

Plaintiff sought review under the institutional grievance process, and the determination was affirmed. Defendant Stinchomb is the chairperson of the Arthur Kill Temporary Release Committee; Dunham and Bertrand are respectively Superintendent and Assistant Superintendent for Programs at Arthur Kill; and Wilson is Director of Temporary Release Programs for the Department of Correctional Services.

Plaintiff asserts that the procedure by which he was denied temporary release deprived him of liberty without due process of law because the standards governing the Committee's decision are vague and arbitrarily applied, the power to set standards was unconstitutionally delegated by the legislature to the Commissioner, the participation of parole officer Graves on the Committee panel violated New York Executive Law § 259–e (McKinney Supp.1980), and the participation of Sergeant Harris violated Directive # 7001 because Harris was not then on the approved list of Committee members. Plaintiff also says that he was denied his constitutional right to equal protection because Arthur Kill alone among New York facilities uses an excessive number of personnel on its Temporary Release Committee and because the denial was the product of invidious discrimination against him. Plaintiff requests this court to appoint a Special Master to oversee the proper functioning of the Temporary Release Program at Arthur Kill, and to order his admission into that program.

■ First, the court must determine whether plaintiff can obtain the requested relief in an action under 42 U.S.C. § 1983. His demand for injunctive relief as to the

future administration of the program clearly is appropriately asserted under that section. *Zurak v. Regan*, 550 F.2d 86 (2d Cir.), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); *Tunin v. Ward*, 78 F.R.D. 59 (S.D.N.Y.1977). His request that this court order his admission into the Temporary Release Program presents a different question. In *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973), the Court held that, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." As a condition to consideration of such an application the prisoner must first exhaust his state remedies.

▪ Perhaps one could view a prisoner's admission to a work release or furlough program as release from confinement, at least for the brief periods during which he is outside the institution's grounds. But such temporary releases do not affect the duration of the period during which he will be subject to restraint. Admission to the program is not an "immediate release or speedier release" from all restraint, but is analogous to a change of status within the institution to one allowing greater privileges. *See Wright v. Cuyler*, 624 F.2d 455 (3d Cir. 1980). The court will therefore consider all of plaintiff's claims.

▪ In accordance with *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the court first must determine whether the plaintiff possessed a constitutionally protected liberty interest in the benefit to which he was denied access. To demonstrate such an interest, he must show that, absent the allegedly improper determination, he was entitled to receive or had a legitimate expectation that he would receive that benefit.

▪ Such an entitlement or expectation may be found in the language of the statute or regulations governing the conferring of the benefit where the benefit is granted automatically absent misbehavior, *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, supra; Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Boothe v. Hammock*, 605 F.2d 661 (2d Cir. 1979), where the standards are sufficiently objective that the prisoner can place himself within them and the administrator's discretion to deny the benefit to a qualifying prisoner is limited, *Winsett v. McGinnes*, 617 F.2d 996 (3d Cir. 1980) (en banc), *cert. denied*, —— U.S. ——, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981), or where there is a consistent pattern or practice of granting the benefit to the vast majority of similarly situated applicants. *Dumschat v. Board of Pardons*, 618 F.2d 216 (2d Cir. 1980), *cert. granted*, —— U.S. ——, 101 S.Ct. 266, 66 L.Ed.2d 127 (1980); *Durso v. Rowe*, 579 F.2d 1365 (7th Cir. 1978), *cert. denied*, 439 U.S. 1121, 99 S.Ct. 1033, 59 L.Ed.2d 82 (1979).

▪ There is no protectable liberty interest where the grant of the benefit is within the broad discretion of the one making the decision or where the restraints on that discretion are only procedural. *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Pugliese v. Nelson*, 617 F.2d 916 (2d Cir. 1980); *Boothe v. Hammock*, 605 F.2d 661 (2d Cir. 1979).

▪ Under these principles plaintiff does not possess a protectable liberty interest in participation in the New York Temporary Release Program. He was an "eligible inmate" for consideration for the program because he met the requirements of § 851(2) of the New York Correction Law and had scored a sufficient number of points on the Vera scale. But this creates only the possibility that he would be admitted to the program. The Temporary Release Committee is required to examine eligible applicants and to determine on the basis of their records, interviews, and professional advice whether admitting them to the program would endanger the community, adversely affect the prisoner, or conflict with applicable rules and regulations.

While the discretion of the Committee to deny admission to an otherwise eligible inmate is somewhat bounded by the language

of the statute, admission is not granted automatically to those who have not misbehaved. The factors are not so objective that an inmate can by his own actions place himself within their ambit. The Committee is required to consider such subjective criteria as "the impressions gained from the personal interview," and is entitled to determine for itself in each case which factors merit the greatest weight. Directive # 7001 § F(3)(c). Admissions to these programs are not so routine as to establish a "pattern or practice" which could give rise to a legitimate expectation. Throughout the state only 48% of applications are approved. At Arthur Kill, only 49.2% are approved (including rejections for ineligibility).

This court therefore concludes that plaintiff's status as an "eligible inmate" does not give him a sufficient legitimate expectation that he would be admitted to the program to create a liberty interest to which due process could attach.

■ Moreover, even if plaintiff had such a liberty interest, the procedures followed provided him with all of the process which he was due. "It is axiomatic that due process 'is flexible and calls for such procedural protections as the particular situation demands.'" *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, supra*, 442 U.S. at 12, 99 S.Ct. at 2106, *quoting, Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Under the procedures established by the Correction Law, the Temporary Release Program Rules and Regulations, and Directive # 7001 an inmate has the right to present evidence to correct errors in his file, to appear before the Committee, to receive written notice of the reasons for the Committee's decision, and to appeal an adverse decision to the Central Office of the Department of Correction. These procedural rights are sufficient to minimize the risk of erroneous decisions, consistent with the essentially predictive and subjective nature of the determination that must be made. The due process clause does not require more.

■ Plaintiff's specific allegations of denial of due process also fail to state a claim. The standards set forth in the statute and in Directive # 7001 are not so vague as to be incapable of any but arbitrary application. Rather, they are as specific as can be expected, given their function as guides for the informed discretion of the Temporary Release Committee. Nor has plaintiff alleged facts showing that the standards were arbitrarily applied to him. The finding that his admission to the Program would constitute a threat to the safety of the community is supported by the seriousness of his offense and his prior history of parole violation.

■ The legislature did not make an unconstitutional delegation to the commissioner of the power to set guidelines. Such a delegation may be freely made provided the legislature itself provides adequate standards to guide the administrator in the exercise of his rulemaking power. *City of Utica v. Water Pollution Control Board*, 5 N.Y.2d 164, 169, 182 N.Y.S.2d 584, 587, 156 N.E.2d 301, 304 (1959). The language of § 855(3) quoted above provides sufficient guidance.

■ Plaintiff's claims that Graves and Harris improperly sat on the committee are without substance. Although Corrections Officer Harris' name was not on the list of Committee personnel at the time he sat on the panel, he apparently had been already orally authorized to participate and his name did appear on the next list of newly authorized members. The delay in publishing the updated list certainly did not deprive plaintiff due process.

Plaintiff does not contend that Parole Officer Graves' participation was not authorized by the institution. Rather plaintiff claims that the participation was improper because the Temporary Release Committees act under the supervision of the facility superintendent and New York Executive Law § 259–e (McKinney Supp.1980) provides that "[e]mployees of the division [of Parole] who collect data, interview inmates and prepare reports for the state board of parole in institutions ... shall not work under the direct or indirect supervision of the head of the institution." However, there is no inconsistency in a prison admin-

istrative structure whereby a parole officer performs certain collateral and peripheral tasks under the supervision of the superintendent while maintaining his independence in the performance of his central duties. Graves' participation neither contravened § 259–e nor constituted a denial of due process.

Plaintiff also raises two issues which in effect allege a denial of equal protection. He says that Arthur Kill's use of many more personnel on its Temporary Release Committees than are authorized for any other prison deprives inmates there of the same level of consistency and experience on the part of the decision makers as are available elsewhere. He also claims that he was invidiously discriminated against by his Committee.

Variations in practices among institutions do not show a violation of their inmates' equal protection rights unless those variations are not rationally related to a legitimate purpose of the institution. *Louis v. Ward*, 444 F.Supp. 1107 (S.D.N.Y. 1978). The government asserts that it is Arthur Kill's status as a low-security institution with many inmates eligible for temporary release that necessitates the use of additional personnel to assure the prompt handling of the requests. To some extent this practice may affect the Correction Department's goal of consistency. But the additional personnel have been approved by the superintendent, and this court cannot say that their use is not rationally related to the goal of speeding dispositions.

While *pro se* pleadings have been held to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972), plaintiff's conclusory statements as to invidious discrimination are insufficient to raise an issue of fact. He alleges only that prisoners who have committed more serious crimes have been granted temporary release. Since the seriousness of the offense is only one factor to be considered, the mere fact that different prisoners with similar or more serious offenses have been admitted to the program may reflect no more than the proper

exercise of the Committee's discretion. *Sanno v. Preiser*, 397 F.Supp. 560 (S.D.N.Y. 1975).

In his cross motion plaintiff has raised an additional claim, alleging that the Arthur Kill Temporary Release Committee failed meaningfully to consider his subsequent application on November 14, 1980 for admission to the same program to which he was originally denied admission on September 11, 1980. He alleges that this failure to consider the later application is contrary to the recent decision of Mr. Justice Cerrito in *Ortiz v. Wilson*, Cal.No.37 (Sup.Ct. Albany County, February 3, 1981). However, consideration of this claim would be premature since plaintiff has apparently not reapplied since that decision was rendered, and therefore the Temporary Release Committee has not been given an opportunity to reconsider its summary denial of plaintiff's reapplication in the light of that case. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813–16, 96 S.Ct. 1236, 1244–1245, 47 L.Ed.2d 483 (1976).

Defendants' motion to dismiss the complaint is granted in all respects. Plaintiff's cross motion is denied. So ordered.