**Samuel Young WASHINGTON,**
**Plaintiff,**

v.

**Leon J. VINCENT, Superintendent of Green Haven Correctional Facility, et al., Defendants.**

No. 73 Civ. 2235.

United States District Court,
S. D. New York.

July 23, 1973.

Samuel Young Washington, pro se.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; by Constance E. B. Margolin, New York City, of counsel.

GURFEIN, District Judge.

This is a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). The plaintiff is a prisoner at Green Haven. The sole relief he seeks is an order requiring the defendants "to set up a system that would provide the inmates of Green Haven with notary public service at least five days a week" (Memo in Supp.).

The prisoners at Green Haven are currently provided with notary service at least twice per week. The Head Clerk at Green Haven has submitted an affidavit wherein he describes the procedure making notary services available to prisoners as follows:

"Green Haven provides inmates with Notary service by making available to them the services of four Notary Publics: Richard L. Middlebrook, Head Clerk; Donald M. Parsons, Correction Officer assigned to the Head Clerk's office; Esmond Gifford, Correction Counselor-Service Unit; and Charles Barola, Correction Officer assigned to the inmate law library. When an inmate needs the services of a Notary Public, he is required to request this service on 'Request for Interview or Information' form which is sent to the Head Clerk's office. The names of those inmates requesting this service are then put on a Call-Out Sheet. The Call-Out Sheet is sent to the housing area where the inmates reside. Those inmates listed on the Call-Out Sheet are notified by a correction officer and are taken to the Administration Corridor at a specified time for notarization of their papers."

In addition, the Head Clerk avers, inmates are afforded notary service on an emergency basis by having a correctional officer call the Clerk's office.

There is no constitutional right to notary service five days a week. The current procedures do not violate the plaintiff's due process right and, therefore, do not give rise to a claim under 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) or 42 U.S.C. § 1983. *Cf.* Elkanich v. Alexander, 315 F.Supp. 659, 662 (D.Kan.), aff'd, 430 F.2d 1178 (10 Cir. 1970). In Johnson v. Avery, 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969) the Supreme Court wrote:

". . . the State may impose reasonable restrictions and restraints upon the acknowledged propensity of prisoners to abuse both the giving and seeking of assistance in the preparation of applications for relief: for example, by limitations on the time and location of such activities and the imposition of punishment for the giving or receipt of consideration in connection with such activities."

The current procedures for providing and limiting access of prisoners to notary public services is not unreasonable. The plaintiff's charge that he was unable to obtain a notarization on December 8, 1972 is answered by the fact that on December 8, 1972 Green Haven was "under a state of emergency" because correctional officials feared disturbances might occur. At that time no inmates were allowed to leave their cells (Affd. R. Middlebrook).

The complaint is dismissed.