**Joseph MARTINO, Plaintiff,**

v.

**William GARD, Deputy Commissioner, Department of Correctional Services, and Dana Smith, Assistant Director, Temporary Release Programs, Defendants.**

**No. 80 C 3504.**

United States District Court,
E. D. of New York.

Nov. 10, 1981.

Joseph Martino, pro se.

Robert Abrams, Atty. Gen. of the State of New York; New York City by Charlotte C. Lee, Asst. Atty. Gen., New York City, for defendants.

NEAHER, District Judge.

Plaintiff, Joseph Martino, a State prisoner now on temporary release from an indeterminate term of imprisonment at the Arthur Kill Correctional Facility, seeks relief *pro se* under 42 U.S.C. § 1983. He claims that he was denied participation in a temporary release program in violation of his constitutional right to due process and equal protection. Seeking injunctive relief and compensatory damages, plaintiff has named as defendants the Deputy Commissioner, Department of Correctional Services, and the Assistant Director of Temporary Release Programs. The action is now before the Court on defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted, or for judgment on the pleadings, F.R.Civ.P. 12(b)(6), (c). Since matters outside the pleadings have been submitted, the Court will treat the motion as one for summary judgment under F.R.Civ.P. 12(b).

At the outset, it is clear that defendants' motion should be granted with respect to plaintiff's claim for injunctive relief. It is uncontested that subsequent to filing the complaint, plaintiff reapplied and was approved for temporary release under the Correctional Facility's "work release" [1] and "furlough" [2] programs. Therefore, the claim for injunctive relief has become moot and no longer justiciable. *Barker Painting Co. v. Local No. 734*, 281 U.S. 462, 50 S.Ct. 356, 74 L.Ed. 967 (1930).

Construing the facts in the light most favorable to plaintiff, defendants appear entitled to judgment as a matter of law. The significant facts are that after plaintiff was denied admission into a temporary release program by the Correction Facility's Temporary Release Committee, the Assistant Director of the program, defendant Smith, reviewed plaintiff's application and approved his release. However, the Acting Commissioner, defendant Gard, denied plaintiff's application without a hearing and without an explanation.

---

[1]. "3. 'Work release program' means a program under which eligible inmates may be granted the privilege of leaving the premises of an institution for a period not exceeding fourteen hours in any day for the purpose of on-the-job training or employment, or for any matter necessary to the furtherance of any such purposes." N.Y. Correction Law § 851(3) (McKinney's Supp.1980).

[2]. "4. 'Furlough program' means a program under which eligible inmates may be granted the privilege of leaving the premises of an institution for a period not exceeding seven days for the purpose of seeking employment, maintaining family ties, solving family problems, seeking post-release housing, attending a short-term education or vocational training course, or for any matter necessary to the furtherance of any such purposes." *Id.* § 851(4).

The threshold inquiry concerning plaintiff's due process claim is whether his denial of admission into a temporary release program "infringed or implicated a 'liberty' interest of [plaintiff] within the meaning of the Due Process Clause." *Meachum v. Fano,* 427 U.S. 215, 224–25, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), the Court "rejected the claim that a constitutional entitlement to release from a valid prison sentence exists independently of a right explicitly conferred by the State." *Connecticut Bd. of Pardons v. Dumschat,* —— U.S. ——, ——, 101 S.Ct. 2460, 2463, 69 L.Ed.2d 158 (1981). Therefore, plaintiff's interest must be one assured by State statute, regulation or judicial decree. *Pugliese v. Nelson,* 617 F.2d 916, 922 (2d Cir. 1980).

■ Examination of New York's Temporary Release Act, N.Y. Correction Law §§ 851–61 (McKinney's Supp.1980), indicates no assurances of admission into the temporary release programs. The statute merely establishes guidelines within which selection into the programs must be effected. Broad discretion is vested in the temporary release committees in each institution. Even greater discretion is granted the Commissioner of Correction upon review of their decisions. Substantively, the statute provides only that the committee determine that temporary release "is consistent with the safety of the community and the welfare of the applicant, and . . . with rules and regulations of the department." *Id.* § 855(4). Significantly, the statute proscribes construction which would "confer upon any inmate the right to participate, or to continue to participate, in a temporary release program." *Id.* § 855(9).

Similarly, the State Correctional Services Department regulations pursuant to the statute provide no protectible entitlement. See New York State Department of Correctional Services, Directive No. 7001, April 7, 1980. Rather, the regulations require the temporary release committee to first determine the inmate's eligibility,[3] and then to conduct a personal interview. Subsequent to the interview, the committee must make a decision based upon several factors, none of which are exhaustive. Finally,

"[t]he Temporary Release Committee must then determine which factors are of greatest importance to the individual applicant before them after considering his point score, the impressions gained from the personal interview, the recommendations of professional staff and the guidelines, keeping in mind the statutory goal of promoting the welfare of the inmate without endangering the community." *Id.* ¶ F(c)(3).

It is therefore apparent that neither the statute nor the regulations provide an expectancy of temporary release entitled to constitutional protection. Far from establishing an automatic or objective procedure, *cf. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, supra,* the State has chosen to impose almost no substantive limitations on the selection committees' decision-making process, and none whatsoever on the Commissioner's final review. Moreover, it appears no court has chosen to controvert the statutory proscription noted above. Therefore, the power vested in the Commissioner and the temporary release committees to select participants for the various temporary release programs conferred no rights upon plaintiff beyond the right to seek admission to such programs. See *Connecticut Bd. of Pardons v. Dumschat, supra.*

■ Turning to plaintiff's equal protection claim, the only allegation appears to be that he and his brother, serving equal sentences as participants in the same offense and maintaining equally excellent prison disciplinary and work records, were afforded disparate treatment by the temporary

---

**3.** The inmate must (1) be within twelve months of his next scheduled parole board appearance or conditional release date, (2) never have been convicted of escape or absconding offenses, and (3) have no outstanding warrants. State of New York, Dept. of Correctional Services, Directive No. 7001, April 7, 1980.

release committee. Such a claim does not amount to a constitutional violation. See *Sanno v. Preiser*, 397 F.Supp. 560, 562 (S.D. N.Y.1975). Since the legislature granted the committees broad discretion in selecting applicants for the programs, and subjective factors inevitably enter into such a process, the Court will not intrude upon the committee's decisionmaking absent allegations of consistent or patterned discrimination. Here, the allegations comprise no more than assertion of error by the committee in plaintiff's individual case.

"The Constitution does not assure uniformity of decisions or immunity from merely erroneous action, whether by the courts or the executive agencies of a state." *Snowden v. Hughes*, 321 U.S. 1, 15, 64 S.Ct. 397, 404, 88 L.Ed.2d 497 (1944) (Frankfurter, J., concurring).

Based on the foregoing analysis, defendants' motion to dismiss the complaint must be granted. Further, to the extent plaintiff asserts non-federal causes of action in the complaint, *e. g.*, violation of the Temporary Release Act, the Court declines to exercise its pendent jurisdiction because the federal claims have been dismissed. See *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

SO ORDERED.

The Clerk of the Court is directed to enter summary judgment dismissing the complaint. The Clerk is further directed to forward copies of this memorandum and order to plaintiff *pro se*, 79–A–3302, Edgecombe Correctional Facility, 611 Edgecombe Avenue, New York, N.Y. 10032; and to counsel for defendant.