In the Matter of LEON SCHWIMMER, Appellant-Respondent, v KENNETH DUNHAM, as Superintendent of the Arthur Kill Correctional Facility, Respondent-Appellant.

Second Department, January 10, 1983

### APPEARANCES OF COUNSEL

*Melvin M. Lebetkin* for appellant-respondent.

*Robert Abrams, Attorney-General* (*Grace A. Brannigan, Gerald J. Ryan* and *Bridget F. Farrell* of counsel), for respondent-appellant.

### OPINION OF THE COURT

*Per Curiam.*

In a purported CPLR article 78 proceeding to direct the Superintendent of the Arthur Kill Correctional Facility to grant the petitioner a seven-day furlough from the facility, the appeal and cross appeal with which we are here concerned relate to two orders of the Supreme Court, Richmond County. By the first order, dated October 12, 1982,

Special Term granted the petitioner, an inmate at the Arthur Kill Correctional Facility, Staten Island, New York, a furlough from legal incarceration for the seven-day period from October 18, 1982 until October 25, 1982. By the second order, dated October 19, 1982, Special Term amended the first order so as to provide that the furlough would run for the three-day period from October 22, 1982 until October 25, 1982.

For reasons stated hereinafter we conclude that the order dated October 12, 1982 and the order dated October 19, 1982, which amended the earlier order, must be reversed and the proceeding dismissed.

The facts are not in dispute.

On January 16, 1980, petitioner was convicted in the Supreme Court, New York County (B. ALTMAN, J.), of grand larceny in the second degree, a class D felony, and sentenced to an indeterminate term of imprisonment not to exceed three years. No minimum period of incarceration was fixed by the court. Another conviction, in Kings County, upon a guilty plea on January 22, 1980, apparently resulted in a concurrent indeterminate prison term of zero to three years. In December, 1981 the First Department affirmed petitioner's New York County conviction (*People v Schwimmer*, 85 AD2d 549), and, having been free for all but approximately three months since that conviction pending the disposition of the appeal, pursuant to a stay of execution of judgment, petitioner returned to the custody of the State Department of Correctional Services. No appeal was ever perfected from the Kings County conviction. In April, 1982 the Board of Parole, acting pursuant to section 70.00 (subd 3, former par [c]) of the Penal Law, fixed his minimum period of incarceration (M.P.I.) at 28 months.

On or about July 6, 1982 petitioner filed a petition for a writ of habeas corpus in the Supreme Court, Richmond County, requesting that he be produced before Justice BENJAMIN ALTMAN in New York County for the fixation of a new M.P.I. The gravamen of petitioner's claim was that since section 70.00 (subd 3, par [c]) of the Penal Law had been repealed effective September 1, 1980 (L 1980, ch 873),

the Parole Board was without jurisdiction to fix his M.P.I. and only the sentencing court could fix his minimum term.

On July 9, 1982 the petition for a writ of habeas corpus was referred by the Supreme Court, Richmond County, to Justice ALTMAN who, on July 28, 1982, denied resentencing on the ground he lacked jurisdiction. No appeal was taken from this determination. Instead, on July 29, 1982, petitioner commenced an article 78 proceeding in the Supreme Court, Richmond County, to review the determination of the Parole Board fixing his M.P.I. and to have his minimum term fixed at one year pursuant to section 70.00 (subd 3, par [b]) of the Penal Law. By judgment dated September 3, 1982 the Supreme Court, Richmond County (RUBIN, J.), granted the petition and directed that petitioner be produced before Justice ALTMAN for the setting of a new minimum term of imprisonment. The court found that the 1980 repeal of paragraph (c) had retroactive effect so that the Parole Board was without jurisdiction to fix the M.P.I. in 1982. This court affirmed the judgment on September 23, 1982 (*Matter of Schwimmer v Hammock,* 89 AD2d 1003). The Court of Appeals has since granted leave to appeal from that determination (57 NY2d 608).

Since July, 1982, petitioner had been pressing for expeditious treatment of his various legal proceedings so that he might be released from incarceration in time for his son's Bar Mitzvah, scheduled for October, 1982. In August, 1982, while his article 78 proceeding was pending in the Supreme Court, Richmond County, petitioner purportedly applied for a furlough which was denied on the ground of ineligibility. No appeal of any kind was taken therefrom. On September 30, 1982 petitioner's wife verbally requested a furlough from Kenneth Dunham, the Superintendent of Arthur Kill Correctional Facility, in which petitioner was incarcerated. This request was verbally denied by Dunham, after consultation with counsel in Albany, on October 4. On October 6, 1982, Justice ALTMAN refused to sign an order presented to him by petitioner's wife for a furlough. Petitioner commenced the instant article 78 proceeding by order to show cause in the Supreme Court, Richmond County, for an order "directing Respondents to grant to Petitioner a furlough from Arthur Kill Correctional Facil-

ity from October 18th, 1982 through October 25th, 1982". On the return date, October 12, the superintendent moved, *inter alia,* to dismiss the proceeding. After hearing oral argument, by order dated October 12, 1982, Special Term directed the superintendent to grant petitioner a furlough from October 18 through October 25, 1982.

On October 15, 1982, the superintendent moved to modify the order dated October 12. On October 18 a lengthy hearing was held before Special Term. On October 19 Special Term modified the prior order so as to reduce the furlough to three days: October 22 to 25. Both sides appeal, the superintendent contending that no furlough should have been granted and the petitioner contending that the period of the furlough should not have been reduced from seven to three days.

The pertinent law governing temporary release applications is as follows: any inmate may apply for a "leave of absence", which is a privilege granted to an inmate to leave the premises of a correctional institution for the time necessary to make a deathbed visit or attend the funeral of certain specified relatives, or to obtain necessary medical or dental treatment (Correction Law, § 851, subd 6; § 855, subd 3). Petitioner's application for temporary release does not fall within this category. However that may be, any "eligible inmate" may not only seek "a leave of absence" but may apply to participate in a "furlough program", which is a privilege granted to an inmate to leave the premises of an institution for up to seven days for the purposes of, *inter alia,* maintaining family ties and solving family problems (Correction Law, § 851, subd 4; § 855, subd 2). This would seem to have been petitioner's purpose. An "eligible inmate" is generally one "who is eligible for release on parole or who will become eligible for release on parole or conditional release within one year" (Correction Law, § 851, subd 2). Parole eligibility arises upon the expiration of the minimum period of imprisonment fixed by the court or the State Board of Parole, as the case may be (Correction Law, § 851, subd 2). Notwithstanding established eligibility and a proper purpose, participation in a temporary release or furlough program is a privilege and not a right (Correction Law, § 855, subd 9).

Applications for a furlough are made to the temporary release committee for the institution (Correction Law, § 852, subd 2; § 855, subd 2), which must determine whether the requested furlough would be consistent with the rules and regulations of the department, the safety of the community and the welfare of the applicant (Correction Law, § 855, subd 4). If approved, the committee submits a memorandum setting forth the details of the furlough program which is transmitted to the superintendent for approval or rejection. If the superintendent rejects it, he is required to state his reasons in writing with a copy to the inmate and the commissioner. The commissioner is then called upon to review the decision and, if he too rejects the program, he is required to state his reasons in writing (Correction Law, § 855, subd 5). Inasmuch as we are dealing with a privilege rather than a right, the scope of judicial review is limited to determining whether the decision denying the furlough violated a positive statutory requirement, denied a constitutional right or was a determination "affected by irrationality bordering on impropriety" (*Matter of Hoffman v Wilson*, 86 AD2d 735).

Upon examination of the record herein, it is at once apparent that petitioner has not complied with the procedural requirements for furlough applications and that there is, in fact, no basis for the relief sought by him. First, no application was ever made to the temporary release committee at the Arthur Kill Correctional Facility. Rather, the application was made directly to the superintendent of that facility, and consisted, in essence, of nothing more than a verbal request from petitioner's wife. Petitioner seeks to excuse the short-circuiting of these procedural requirements by claiming exigent circumstances; i.e., the closeness of the date of his son's Bar Mitzvah. However, under the statute (Correction Law, § 855, subd 3), exigent circumstances may be invoked only in the case of applications for a leave of absence. Moreover, a furlough request could have been pursued earlier, concurrently with the appeal in this court and/or the effort to secure a resentencing in New York County.

Even if we were to excuse petitioner's failure to apply to the temporary release committee in the first instance,

problems remain. The superintendent orally rejected the request. The statute requires that he state his reasons in writing (Correction Law, § 855, subd 5). Further, the rejection of the superintendent must be reviewed by the commissioner. If he, too, rejects the application, he must also state his reasons in writing (Correction Law, § 855, subd 5). There is no indication whatsoever in this record that the commissioner ever reviewed the superintendent's decision. Hence, all other deficiencies aside, the proceeding herein would still have to be dismissed for failure to exhaust administrative remedies.

What is more, the instant proceeding is not properly brought as one for *review* of an administrative determination pursuant to CPLR article 78. As the petition makes clear, it is, instead, in the nature of an original application to Special Term to grant a furlough, regardless of the superintendent's opposition thereto. Such an application has no cognizable legal basis since the courts are without jurisdiction to make any original determinations in the area of internal prison administration and discipline, and rightfully so. Furthermore, even if strictly framed as a proceeding to review, insuperable difficulties arise. Aside from the failure to exhaust administrative remedies, fatal in itself, the absence of any written reasoned denial precludes the granting of full relief on the merits. Thus, it is impossible to determine whether the refusal to grant a furlough violated a positive statutory requirement, denied a constitutional right or was so irrational as to border on impropriety, without knowing the reasons for said refusal. Normally then, the remedy would be to reverse and remand to the commissioner for a written statement of reasons. Alternatively, and assuming, *arguendo,* that the denial herein was premised solely on a determination that petitioner was "ineligible" to participate in a temporary release program, a judicial finding that petitioner was, in fact, "eligible" or must be deemed so, would result only in a remand to the superintendent (or the temporary release committee) for consideration of the application on the merits. In this case there is no sound reason for remanding. Although on this appeal the petitioner complains of the fact that the furlough which was granted to him for the

purpose of attending his son's Bar Mitzvah was reduced from seven to three days, petitioner has already had the benefit of a three-day furlough for said purpose.

Accordingly, for all of the above reasons, Special Term's orders dated October 12, 1982 and October 19, 1982, must be reversed and the proceeding dismissed.

BRACKEN, J. P., NIEHOFF, RUBIN and BOYERS, JJ., concur.

Two orders of the Supreme Court, Richmond County, dated October 12, 1982 and October 19, 1982, respectively, reversed, on the law, without costs or disbursements, and proceeding dismissed.