**Joseph DUGAR, Plaintiff,**

**v.**

**Thomas COUGHLIN, Supt. Adirondack Correct. Facility, Supt. Auburn Correct. Facility, Supt. Ossining Correct. Facility, Carl Hunt, Steve Wiley, Defendants.**

**83 Civ. 7471 (JES).**

United States District Court,
S.D. New York.

July 11, 1985.

Joseph Dugar, pro se.

Robert Abrams, Atty. Gen., State of N.Y., New York City, for defendants; Evelyn Tenenbaum, Asst. Atty. Gen., New York City, of counsel.

## OPINION & ORDER

SPRIZZO, District Judge:

▆▆▆ Plaintiff pro se Joseph Dugar brought this action pursuant to 42 U.S.C. §§ 1983 & 1985 for injunctive relief and damages,[1] alleging that various actions and practices of the defendants violated his civil rights and those of state prisoners. The complaint states two types of claims: the first relates to prisoners' right of access to the courts, and the second regards prisoners' participation in the New York Temporary Release Program ("TRP").

Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.[2]

---

**1.** Plaintiff's complaint states that his action also "arises under" sections 4, 241, 242, 245, 246, 286, 371, 1711, 1726, 1901, and 2071(b) of Title 18. Sections 241, 242, and 245 relate to deprivation of civil rights, however there is no private right of action under any of these statutes. *See, e.g., Powell v. Kopman,* 511 F.Supp. 700, 704 (S.D.N.Y.1981); *Sauls v. Bristol-Meyers Co.,* 462 F.Supp. 887, 889 (S.D.N.Y.1978). The other provisions of Title 18 do not secure rights to plaintiff. He can neither sue directly under them, nor can he use them as a predicate for a section 1983 action. *See, e.g., Dopico v. Goldschmidt,* 518

F.Supp. 1161, 1176 (S.D.N.Y.1981), *aff'd in part, rev'd in part on other grounds,* 687 F.2d 644 (2d Cir.1982).

**2.** Defendants are Thomas Coughlin, Commissioner of the New York State Department of Correctional Services; the superintendents of Adirondack, Auburn and Ossining Correctional Facilities; unnamed "administrative personnel;" and Carl B. Hunt and Steve Wiley, members of the Ossining Temporary Release Committee.

## A. *Access to the Courts*

Plaintiff seeks an injunction (1) prohibiting defendants from charging prisoners for postage for legal mail; (2) prohibiting defendants from charging prisoners for all photocopying services in connection with legal work, except for copies made from books; (3) ordering that photocopying machines be placed in prison law libraries; and (4) requiring defendants to make available to prisoners the services of a notary five days a week. Plaintiff also seeks restitution of $200.00, apparently for prior charges for mail and copying services, and $15,000,000 in punitive damages. The basis for these claims is plaintiff's assertion that defendants' present practices violate the due process and equal protection rights of prisoners.

■■■■■ Prisoners have a well established right of access to the courts, which prison regulation must not "unjustifiably obstruct." *See, e.g., Procunier v. Martinez,* 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974); *Ex Parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034 (1941). This principle, however, requires only that prisoners' access to the courts be "adequate, effective, and meaningful," *see, e.g., Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977), and does not preclude the balancing of prisoners' rights with the legitimate interests of the states, including economic concerns. *See, e.g., id.* at 825, 97 S.Ct. at 1496; *Harrell v. Keohane,* 621 F.2d 1059, 1061 (10th Cir.1980); *cf. Ross v. Moffitt,* 417 U.S. 600, 612, 94 S.Ct. 2437, 2444, 41 L.Ed.2d 341 (1974). A state need not "provide the *best* manner of access, nor is it obligated to equalize the financial resources of each of its inmates.... So long as the State's procedure's [sic] meet constitutional minima, the courts should not second-guess them." *Pino v. Dalsheim,* 558 F.Supp. 673, 675 (S.D.N.Y.1983) (emphasis in original).

### 1. *Charges for Legal Mail*

■■■■■ The New York Department of Correctional Services ("the Department") has provided that prisoners may mail five one-ounce letters per week free of charge. Prisoners must pay for any mail weighing more than one ounce, or in excess of five one-ounce letters in any week. *See* Department of Correctional Services Directive No. 4422 at III(D)(1) & (3) (Dec. 7, 1981). Plaintiff claims that prisoners are constitutionally entitled to free postage for all legal mail, that Congress and the United States Postal Service have appropriated funds to allow prisoners to mail their legal materials for free, and therefore that the practice in New York, which may result in prisoners being charged for legal correspondence, is unlawful.

Plaintiff is incorrect in claiming that funds have been provided to fully subsidize prisoners' legal mail. Furthermore, while a prisoner's constitutional right of access to the courts includes a right to use the mails, this right is not absolute, *see United States ex rel. Thompson v. Fay,* 197 F.Supp. 855, 856 (S.D.N.Y.1961), and it does not require that prisoners be provided with unlimited free postage. *See, e.g., Bach v. Coughlin,* 508 F.2d 303, 307 (7th Cir.1974); *Williams v. Ward,* 404 F.Supp. 170, 171–72 (S.D.N.Y.1975). The practice in New York safeguards prisoners' right of access while also protecting the State's legitimate budgetary interests. *See, e.g., Twyman v. Crisp,* 584 F.2d 352, 359 (10th Cir.1978); *Bach, supra,* 508 F.2d at 307–08. It clearly does not suppress *all* court access, as plaintiff contends. Nor is there any basis to find that this policy deprives prisoners of money earned in prison without due process. Therefore, this aspect of plaintiff's complaint must be dismissed for failure to state a claim.

### 2. *Charging for Copy Machine Services*

Plaintiff contends that, with the exception of charges for photocopying from books, it is unconstitutional to charge prisoners for photocopying services related to their legal work. He therefore challenges the practice at certain prisons whereby prisoners must pay $.10 per page for photocopies. He also notes in his complaint that prisoners have the option of using hand-

written or typewritten copies as an alternative to photocopies, and that no charge is imposed for paper.

 As with charges for postage, an inmate's right of access to the courts is not unconstitutionally infringed by reasonable charges for copying services, particularly in light of the available alternatives. *See, e.g., Johnson v. Parke,* 642 F.2d 377, 380 (10th Cir.1981); *Harrell, supra,* 621 F.2d at 1061. These charges do not result in total or undue denial of access to the courts, but are a reasonable balance of the legitimate interests of both prisoners and the State. *See Harrell, supra,* 621 F.2d at 1061.

 Plaintiff has cited no authority for his claim that the Constitution requires that photocopying machines be placed in prison law libraries. It follows that this claim must also be dismissed.

### 3. *Availability of Notary Services*

 Plaintiff contends that prisoners are constitutionally entitled to have available to them the services of a notary five days a week, and that the practice in New York violates this right. Once again, plaintiff has cited no authority for this claim. This court has squarely held that inmates do not have a constitutional right to notary services five days a week, *see Washington v. Vincent,* 361 F.Supp. 942, 943 (S.D.N.Y. 1973), and can see no reason for departing from that ruling in this case. Therefore, these allegations must also be dismissed for failure to state a claim.

### 4. *Equal Protection Claim*

Plaintiff alleges in a conclusory fashion that the policies and practices with respect to postage, photocopying, and notary services discussed above deprive state prisoners of the equal protection of the laws, because of an "invidious class-based dis-

criminatory animus" against them, and that without this hinderance plaintiff's access to the courts would have been "more easily available."

 The Court can find no basis here for an equal protection violation. Plaintiff does not allege that either he or all prisoners in New York are discriminated against in comparison to some other group. Rather, plaintiff simply claims that all prisoners are entitled to free postage, photocopying, and daily notary services, and that the failure to provide these deprives prisoners of equal protection. The law is clear, however, that prisoners are not constitutionally entitled to any of these things. Moreover, the restrictions which are placed on prisoners' access to the courts do not rise to the level of an equal protection violation as they do not deprive prisoners of "an adequate opportunity to present [their] claims fairly." *See Ross v. Moffitt, supra,* 417 U.S. at 616, 94 S.Ct. at 2447.

Because the allegations regarding access to the courts fail to state a claim for the violation of any constitutional or federal right, they must be dismissed.

### B. *Temporary Release Program ("TRP")*

 Plaintiff alleges that he was denied due process and equal protection in connection with his rejection for participation in the TRP at Ossining Correctional Facility.[3] He seeks damages and an injunction prohibiting the holding of "Temporary Release Evaluation Hearings" without a stenographer or recording device.

### 1. *Due Process*

 In order to state a due process claim, plaintiff must have a constitutionally protected liberty interest with respect to participation in the TRP, *see, e.g., Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7,

---

**3.** Plaintiff has also stated in affidavits filed with respect to this motion that he believes the rules and regulations of the Department violate the Constitutions and laws of the United States and of New York State. This claim does not appear in plaintiff's complaint, and is therefore not

properly before the Court, however the Court notes that these regulations have been challenged and upheld under the Due Process clause. *See Marciano v. Coughlin,* 510 F.Supp. 1034, 1038 (E.D.N.Y.1981).

99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979); *Meachum v. Fano,* 427 U.S. 215, 223–24, 96 S.Ct. 2532, 2537–38, 49 L.Ed.2d 451 (1976), which in turn depends upon the nature of the interest asserted. *See, e.g., Greenholtz, supra,* 442 U.S. at 7, 99 S.Ct. at 2103; *Board of Regents v. Roth,* 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

▮▮▮▮▮ Plaintiff's claimed liberty interest is in conditional release from valid incarceration. However, prisoners have been legitimately deprived of all but the most basic liberty interests, *see, e.g., Hewitt v. Helms,* 459 U.S. 460, 467–68, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *Greenholtz, supra,* 442 U.S. at 7, 99 S.Ct. at 2103; *Meachum, supra,* 427 U.S. at 224, 96 S.Ct. at 2538; *Pugliese v. Nelson,* 617 F.2d 916, 921 (2d Cir.1980), and as the Supreme Court noted in *Greenholtz* with respect to parole, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." 442 U.S. at 7, 99 S.Ct. at 2104. It is also well-settled that the mere fact that a state has a conditional release program does not, in and of itself, create a protected liberty interest in the form of a legitimate expectation or entitlement of participation therein which implicates due process rights. *See, e.g., Hewitt, supra,* 459 U.S. at 471, 103 S.Ct. at 871; *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 465, 467, 101 S.Ct. 2460, 2464, 2465, 69 L.Ed.2d 158 (1981); *Greenholtz, supra,* 442 U.S. at 9–11, 99 S.Ct. at 2104–05; *Berard v. State of Vermont Parole Board,* 730 F.2d 71, 73–74 (2d Cir. 1984); *Boothe v. Hammock,* 605 F.2d 661, 663 (2d Cir.1979); *cf. Pugliese, supra,* 617 F.2d at 923.

▮▮▮ The fact that the state "holds out the *possibility* of [conditional release] provides no more than a mere hope that the benefit will be obtained." *See Greenholtz, supra,* 442 U.S. at 11, 99 S.Ct. at 2105 (emphasis in original); *see also Dumschat, supra,* 452 U.S. at 465, 101 S.Ct. at 2464; *Pugliese, supra,* 617 F.2d at 922; *Kozlowski v. Coughlin,* 539 F.Supp. 852, 855 (S.D.

N.Y.1982); *Russo v. New York State Board of Parole,* 50 N.Y.2d 69, 74, 405 N.E.2d 225, 227, 427 N.Y.S.2d 982, 984 (1980). Therefore, any liberty interest giving rise to due process protections must arise from a "right explicitly conferred by the State," *see Dumschat, supra,* 452 U.S. at 464, 101 S.Ct. at 2464; *see also Meachum, supra,* 427 U.S. at 226, 96 S.Ct. at 2539, by way of statute, judicial decree, or regulation. *See, e.g., Hewitt, supra,* 459 U.S. at 469, 103 S.Ct. at 870; *Dumschat, supra,* 452 U.S. at 464–65, 101 S.Ct. at 2464; *Wolff v. McDonnell,* 418 U.S. 539, 557–58, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *Pugliese, supra,* 617 F.2d at 922; *Kozlowski, supra,* 539 F.Supp. at 855; *Martino v. Gard,* 526 F.Supp. 958, 960 (E.D.N.Y.1981).

Plaintiff acknowledges in his complaint and motion papers that no inmate has a constitutional right to participate in the TRP. He contends, rather, that the New York statute and regulations create a protected liberty interest in the TRP, and that having accumulated the necessary "points" on a scale used in TRP eligibility evaluation, and considering his other "qualifications", he was *entitled* to participate in the program. The Court rejects this reading of both the statute and the regulations. Unlike the parole statute at issue in *Greenholtz, supra,* which had "unique structure and language" providing that parole "shall" be granted "unless" certain factors were present, *see* 442 U.S. at 11–21, 99 S.Ct. at 2105–2110, the New York statute specifically states that "[p]articipation in a temporary release program shall be a privilege. Nothing contained in this article may be construed to confer upon any inmate the right to participate...." N.Y.Correct.Law § 855(9) (McKinney Supp.1984–85), *see also People ex rel. Feliciano v. Waters,* 99 A.D.2d 850, 850, 472 N.Y.S.2d 455, 456 (2d Dept.1984); *Hoffman v. Wilson,* 86 A.D.2d 735, 735, 446 N.Y.S.2d 609, 610–11 (3d Dept.1982); *People v. Miller,* 79 A.D.2d 687, 688, 434 N.Y.S.2d 36, 37 (2d Dept. 1980); *cf. Dumschat, supra,* 452 U.S. at 465, 101 S.Ct. at 2464.

Inclusion in the program depends upon the Temporary Release Committee's discretionary determination of whether participation "is consistent with the safety of the community and the welfare of the applicant, and is consistent with rules and regulations of the department, ..." N.Y.Correct.Law § 855(4). *See also Martino, supra,* 526 F.Supp. at 960. The statute does not mandate that certain prisoners "shall" participate "unless" specific disqualifications are present, but outlines a discretionary program. Therefore, the statute implicates no liberty interests. *Cf. Greenholtz, supra,* 442 U.S. at 10, 99 S.Ct. at 2105; *Boothe, supra,* 605 F.2d at 663–64; *Russo, supra,* 50 N.Y.2d at 74–76, 405 N.E.2d at 227–28, 427 N.Y.S.2d at 984–85.

The regulations promulgated under the New York TRP statute simply outline procedures and factors the Committee "should" consider in exercising its discretion; they do not list the exclusive factors to be considered nor do they mandate approval if certain factors are present. Therefore, while they may establish "guidelines ... used to structure the exercise of discretion," they also fail to create any entitlement or legitimate expectation giving rise to a protected liberty interest. *See Boothe, supra,* 605 F.2d at 664; *see also Martino, supra,* 526 F.Supp. at 960; *Marciano v. Coughlin,* 510 F.Supp. 1034, 1037–38 (E.D.N.Y.1981); *Schwimmer v. Dunham,* 91 A.D.2d 100, 103, 457 N.Y.S.2d 838, 841 (2d Dept.1983); *cf. Dumschat, supra,* 452 U.S. at 466, 101 S.Ct. at 2465; *Pugliese, supra,* 617 F.2d at 923–25 & n. 6; *Cofone v. Manson,* 594 F.2d 934, 938–39 (2d Cir.1979); *Russo, supra,* 50 N.Y.2d at 75, 405 N.E.2d at 228, 427 N.Y.S.2d at 985.

*Compare Winsett v. McGinnes,* 617 F.2d 996 (3d Cir.1980) (en banc), *cert. denied sub nom. Anderson v. Winsett,* 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981).

Finally, plaintiff has not cited nor has the Court found any judicial decree which explicitly confers a right protected by due process. While a few courts have held that prisoners do have a constitutionally protected liberty interest with respect to *removal* from New York's TRP, *see Tracy v. Salamack,* 572 F.2d 393, 395–96 (2d Cir.1978); *Schumate v. New York,* 373 F.Supp. 1166, 1169–70 (S.D.N.Y.1974); *contra Feliciano, supra,* 99 A.D.2d 850, 472 N.Y.S.2d 455, there is a well-settled difference in the interests involved in initial eligibility determinations with respect to discretionary conditional release programs, and those implicated by subsequent revocation of participation. *See, e.g., Dumschat, supra,* 452 U.S. at 464, 101 S.Ct. at 2464; *Greenholtz, supra,* 442 U.S. at 9–10, 99 S.Ct. at 2104–05; *Pugliese, supra,* 617 F.2d at 922; *Boothe, supra,* 605 F.2d at 663; *United States ex rel. Bey v. Connecticut State Board of Parole,* 443 F.2d 1079, 1086 (2d Cir.), *vacated,* 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971); *Schumate, supra,* 373 F.Supp. at 1169. As the Supreme Court noted in *Greenholtz,* a "crucial distinction" exists between "being deprived of a liberty one has, ... and being denied a conditional liberty that one desires." 442 U.S. at 9, 99 S.Ct. at 2105. Therefore, those cases finding an interest protected by due process with respect to removal from a TRP do not require the recognition of a similar interest with respect to *initial* determinations regarding participation.[4]

---

4. The Appellate Division, Second Department has held that revocation of a prisoner's participation in the TRP due to a change in his possible parole date is "not a violation of any cognizable legal right." *See Feliciano, supra,* 99 A.D.2d at 850, 472 N.Y.S.2d at 456. The court specifically noted its disapproval of an earlier state Supreme Court decision which had found a due process interest with respect to revocation of TRP participation, and which had cited as authority, *inter alia,* the district court decision in *Tracy v. Salamack. See id.*

*Tracy v. Salamack* was decided before the Supreme Court's decisions in *Greenholtz* and *Dumschat.* In light of those cases, this Court disagrees with the statement of the district court in *Tracy, see* 440 F.Supp. 930, 934 (S.D.N.Y. 1977), that due process rights attach to the initial determination regarding participation in a TRP. *Cf. Boothe v. Hammock,* 605 F.2d 661 (2d Cir.1979) (rejecting, based on *Greenholtz,* prior Second Circuit law that prisoners have due process interest in initial parole determinations).

■ The arguments raised by plaintiff regarding his point score and other qualifications may demonstrate that he was eligible for consideration for TRP participation and had a right to *apply* for the program. *See, e.g., Martino, supra,* 526 F.Supp. at 960; *Marciano, supra,* 510 F.Supp. at 1037–38; *cf. Dumschat, supra,* 452 U.S. at 467, 101 S.Ct. at 2465; *Hoffman, supra,* 86 A.D.2d at 735, 446 N.Y.S.2d at 610. However, because there is no right explicitly conferred by any statute, regulation, or judicial decision which creates a liberty interest protected by due process with respect to initial determinations regarding actual *participation* in New York's TRP, plaintiff's due process claims must be dismissed.[5]

### 2. *Equal Protection*

Plaintiff contends that his right to equal protection of the laws was violated by his rejection for TRP participation. Apparently in support of this claim, he states that he had been approved for TRP participation at other prisons, and was subsequently released on parole.

■ The Court can find no basis here for an equal protection claim. Plaintiff does not allege that he was treated differently than other similarly situated prisoners. Moreover, the Court has already held that plaintiff was not entitled to

participate in the program, and approval of his application was within the discretion of the Committee. Therefore, to the extent he argues that another decisionmaker might have disagreed with the conclusion of the Committee denying plaintiff's application, this claim has no constitutional implications. Plaintiff's real complaint is that the Committee's decision was erroneous, and this does not rise to the level of a constitutional violation. *See, e.g., Martino, supra,* 526 F.Supp. at 960–61; *Marciano, supra,* 510 F.Supp. at 1039; *Sanno v. Preiser,* 397 F.Supp. 560, 562 (S.D.N.Y. 1975).

Plaintiff also alleges that the equal protection rights of all state prisoners are violated (1) by a requirement at Ossining that inmates participate in some other program before being considered qualified for the TRP; and (2) by the practice at Ossining of almost never approving prisoners with court actions pending against the State or the Department for TRP participation.

■ With respect to the first allegation, the Court fails to see any ground for an equal protection violation. Plaintiff identifies no specific rule demonstrating that Ossining *requires* prior program involvement before approving any inmate for TRP participation.[6] Moreover, differing practices in administering this discretion-

---

To the extent that the district court in *Tracy* depended on *Cardaropoli v. Norton,* 523 F.2d 990 (2d Cir.1975), as authority for the statement that due process rights are implicated in *all* initial TRP determinations, *see* 440 F.Supp. at 934, this Court also disagrees. *Cardaropoli,* also decided before *Greenholtz* and *Dumschat,* as well as before *Meachum,* dealt with the issue of classification of prisoners as "special offenders," which had the collateral effect, *inter alia,* of "hindering or precluding" eligibility for a TRP-type program. *See Cardaropoli, supra,* 523 F.2d at 995. The Court held that these collateral effects required that prisoners be protected by due process in the classification procedure. In *Pugliese, supra,* the Second Circuit noted that *Cardaropoli* was no longer governing in light of the above-mentioned Supreme Court rulings. *See* 617 F.2d at 923.

5. It is therefore unnecessary to decide whether the procedures plaintiff complains of herein satisfied due process. *See, e.g., Dumschat, supra,*

452 U.S. at 463, 101 S.Ct. at 2463; *Leis v. Flynt,* 439 U.S. 438, 443–44, 99 S.Ct. 698, 701, 58 L.Ed.2d 717 (1979) (per curiam). The Court notes, however, that in his post-argument affidavit plaintiff stated that the defendants *were* permitted, consistent with due process, to hold temporary release hearings without the aid of any recording device.

6. The only apparent basis for this allegation is the fact that in denying plaintiff's TRP application the Committee stated, *inter alia,* that it felt plaintiff had not availed himself of any meaningful program opportunities at Ossining, and suggested that he do so, *see Complaint,* Exhibit 2, and the "Notice of Results of Appeal" provided that plaintiff "must enroll in/continue participation in" a "Group Therapy" and a "Vocational/Academic" program. *See* Affidavit of Evelyn Tenenbaum, Exhibit A (June 1, 1984).

ary program which are rationally related to a legitimate purpose do not violate equal protection. *See, e.g., Marciano, supra,* 510 F.Supp. at 1039. Because the regulations provide that defendants have broad discretion to consider anything which they, in their best judgment, find significant, they were free to consider plaintiff's involvement or lack thereof in other prison programs. This is clearly rationally related to the purposes and goals of the TRP. Indeed, the regulations provide that the Committee may consider an applicant's performance in programs.

■ The second claim that there is discrimination at Ossining against prisoners with actions pending is a wholly conclusory allegation and may therefore be dismissed. *See Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983). The Court is mindful of the general rule that a complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts which would entitle him to relief, *see Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 180 (1957), and that a prisoner's pro se complaint is held to a less stringent standard than formal pleadings drafted by lawyers. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 598, 30 L.Ed.2d 652 (1972); *Marciano, supra,* 510 F.Supp. at 1039. However, in *Flaherty,* also a section 1983 action claiming denial of temporary release based on a prisoner's involvement in litigation, the Second Circuit stated that prisoners' retaliation claims are "prone to abuse," and that when such claims are alleged "in wholly conclusory terms, [they] may safely be dismissed on the pleadings." *Id.; cf. Marciano, supra,* 510 F.Supp. at 1039; *Hoffman, supra,* 86 A.D.2d at 735, 446 N.Y. S.2d at 611. Therefore, plaintiff's equal protection claims are dismissed.

## CONCLUSION

For the reasons stated herein, plaintiff's complaint is dismissed for failure to state a claim.

It is SO ORDERED.