**David H. FULLER and George Hollgarth, Plaintiffs,**

**v.**

**Michael P. LANE, Dale Petersen, Mary Schweizer, Joseph Galassi, Defendants.**

**No. 86–3017.**

United States District Court, C.D. Illinois, Springfield Division.

June 21, 1988.

David A. Fuller, Denver, Colo., George Hollgarth, Decatur, Ill., for plaintiffs.

Thomas E. Little, Asst. Atty. Gen., Springfield, Ill., for defendants.

## OPINION

RICHARD MILLS, District Judge:

Is there a constitutional right to work in prison?

Clearly—NO!

Fuller and Hollgarth (former inmates at the Lincoln Correctional Center) initiated this civil rights action under 42 U.S.C. § 1983 alleging that Defendants—various employees of the Illinois Department of Corrections—violated their constitutional rights by denying them placement in a work release program. Plaintiffs claim that Defendants impermissibly deny all convicted sex offenders placement in the program.

Currently before the Court is Defendants' motion for summary judgment.

It is allowed.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir.1984), *cert. denied*, 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). Of course, "[i]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). However, "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2553.

## I

The undisputed facts are as follows: Both Plaintiffs were incarcerated in the Lincoln Correctional Center at the time this action arose. David Fuller was serving a seven-year sentence for attempted deviate sexual assault, intimidation, and unlawful restraint. George Hollgarth was serving a sentence for an aggravated criminal sexual abuse conviction.

In March 1985, Fuller applied for the work release program at the Lincoln Correctional Minimum Security Center. His application was approved at the institutional level. On June 3, 1985, however, Defendant Joseph Galassi, the Transfer Coordinator for the Illinois Department of Corrections, denied Fuller's request. Galassi stated that he was denying Fuller's pre-release application "[b]ased on the nature of the offense."

Fuller filed a second application for participation in the work release program after the waiting period for reviewing requests expired. His application was again denied. On December 20, 1985, Defendant Lane, the Director of Corrections, wrote a letter to Fuller indicating:

I have taken the liberty of reviewing your general office file and I note that the Transfer Coordinator initially denied your request for community correctional center placement on June 3, 1985, based upon the serious nature of the instant offense. I note that you are serving concurrent sentences of seven-years for Attempted Deviate Sexual Assault, four-years for Intimidation and three-years for Unlawful Restraint. You appeared before the Administrative Review Board Board on July 5, 1985, at which time that Panel recommended, to which I concurred, that your grievance be denied. Essentially, I remain of the opinion that the rationale cited by the Transfer Coordinator was appropriate. Therefore, no further action is warranted with regard to this issue.

The complaint and other pleadings fail to discuss the underlying facts pertaining to

Hollgarth's claim. According to the records submitted to the Court, he, too, requested permission to participate in the work release program. Hollgarth's request was also denied; the stated reason for the denial was that Hollgarth was "appropriately placed at the Lincoln Correctional facility." Both plaintiffs grieved their rejections, but the Administrative Review Board (ARB) affirmed the denials.

## II

Plaintiffs claim that Defendants violated their constitutional rights by refusing to admit them into the work release program. They argue that Defendants' actions have violated their right to equal protection by denying all sex offenders placement in the work release program while allowing other inmates convicted of equally or more serious crimes to participate in the work release program.

■ But there is no constitutional right to work in prison. *Garza v. Miller*, 688 F.2d 480, 485 (7th Cir.1982), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed. 2d 1000 (1983). Moreover, the Constitution does not require prison authorities to provide educational, rehabilitative, or vocational programs, in the absence of conditions that rise to a violation of the Eighth Amendment. *Id.* Various circuits have accordingly held that an inmate has no constitutional right to enter a discretionary work release program. *See, e.g., Winsett v. McGinnes*, 617 F.2d 996, 1005 (3rd Cir. 1980), *cert. denied*, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981); *Finley v. Staton*, 542 F.2d 250, 251 (5th Cir.1976).

Because the decision whether to grant or deny work release privileges is discretionary, the due process clause does not apply to Plaintiffs' parole denial. To obtain a protectible right, a person must have more than an abstract need, desire, or unilateral expectation of the interest at stake. He must, instead, have a legitimate claim of entitlement to it. *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979), *citing Board of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972). That the state holds out the possibility of work release privileges provides no more than a mere hope that the benefit will be obtained. The inmate's hope of discretionary pre-release is not protected by the Fourteenth Amendment. Thus, any rights Plaintiffs claim to possess with regard to work release must derive from state law.

Illinois Revised Statute, ch. 38, para. 1003–13–1 (1985) authorizes the Department of Corrections to establish a work release program. Under those statutory provisions, the Department of Corrections has formulated rules by which it administers the work release program. Illinois Administrative Code Title XX, § 455.30 (1984) sets forth the eligibility criteria an inmate must meet before he may be *considered* for placement in a community correctional center (work release center). In addition to those criteria, § 455.40 states that the appropriate corrections personnel shall review work release applications and "shall approve or deny the placement."

This statutory scheme does not grant eligible inmates an automatic right to work release; rather, that decision lies within the discretion of those charged with granting work release assignments. The statutory language clearly authorizes prison officials to use their judgment:

The Department *may* allow a committed person to leave an institution or facility during reasonable hours where such release would assist the individual's rehabilitation *and would not cause undue risk to the public....*

Ill.Rev.Stat. ch. 38, para. 1003–13–2 (1985) (emphasis added).

The legislative history of the work release statute further establishes the intent to provide the department with widely discretionary decision-making power when making work release program assignments:

The section adopts the position that the Department which has general responsibility for program assignments, must be able to make work and day release decisions on the basis of its knowledge of the person involved.

Ill.Stat.Ann. ch. 38, para. 1003–13–2 (Smith–Hurd 1982) (Council Commentary). The courts have accordingly shown great deference to prison officials making such discretionary decisions regarding work release assignments. *See, e.g., Greenholtz*, 442 U.S. at 7, 16, 99 S.Ct. at 2103–04, 2108; *Watts v. Morgan*, 572 F.Supp. 1385, 1388 (N.D.Ill.1983).

■ The discretion given to prison officials in determining placement exceptions for work release does not make the program or its application constitutionally infirm. The Department of Corrections' rules list several minimum eligibility criteria for consideration for placement in the work release program. *See* Ill.Admin. Code, Title XX, § 455.30 (1984). The statute authorizing the work release program, furthermore, grants prison officials the discretion to admit an inmate in the work release program "where such release would assist the individual's rehabilitation and would not cause undue risk to the public. . . ." Ill.Rev.Stat., ch. 38, para. 1003–13–1 (1985). These regulations place a limitation on prison officials' permissible use of discretion, ensuring that prison officials act in accordance with the purpose of the program. The Court thus rejects Plaintiffs' argument that there are no "salient factors" used in determining a candidate's suitability for the work release program.

Plaintiffs contend that Defendants impermissibly denied their work release applications based on their sex offense convictions. Plaintiffs allege that sex offenders have been classified as a "suspect class" who are systematically excluded from the work release program.

■ The traditional indicia of a "suspect class," as defined by the Supreme Court, include a class "saddled with such disabilities, or subjected to such a history of purposeful unequal treatments, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process."

*San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1294, 36 L.Ed.2d 16 (1973), *cited in David K. v. Lane*, 839 F.2d 1265, 1270 n. 4 (7th Cir. 1988). For example, classifications based on race or ancestry are inherently suspect and subject to strict scrutiny. *David K.*, 839 F.2d at 1270 n. 4. Although inmates of correctional facilities are seriously disadvantaged when they are compared to individuals at liberty, and although they are the subject of political hostilities, inmates do not constitute a suspect class because their status is the result of precise, individualized application of otherwise neutral laws. *Davis–El v. O'Leary*, 626 F.Supp. 1037, 1043 (N.D.Ill.1986); *Graham v. Bowen*, 648 F.Supp. 298, 301 (S.D.Tex.1986).

■ Moreover, the Court finds no authority to support Plaintiffs' contention that sex offenders constitute a suspect class entitled either to a heightened or an intermediate level of scrutiny. On the contrary, in *Finley*, 542 F.2d at 251, the Fifth Circuit Court of Appeals held that an Alabama law requiring sex offenders to obtain special board certification in order to be eligible for work release did not state an equal protection claim.[1]

In the case at bar, Defendants admittedly expressly relied on Plaintiff Fuller's criminal record in denying his requests for work release. The records pertaining to Hollgarth's work release application, however, do not indicate that his sexual history was a decisive factor in his denial. Rather, Defendants decided that Hollgarth's pending release from custody rendered the pre-release program impracticable for him. The minimum criteria for participation in the pre-release program are clearly designed to ensure that the inmates who are selected to participate are those who will present the least risk to the community, and benefit most from the program. An inmate's record is highly probative of his likelihood of participating in the reintegration program without problems; in the same token, an inmate's ability to complete

---

1. The Supreme Court of Colorado upheld a similar statute in *People v. Kibel,* 701 P.2d 37 (Colo. 1985).

the program is relevant to whether the program will be helpful for him.

Plaintiff Fuller's mittimus and statement of facts concerning two criminal indictments indicate a pattern of "ongoing efforts ... to lure young girls to [his] home for the purpose of sexually assaulting them. These facts should be considered when determining [Fuller's] eligibility for release from the Department of Corrections...." Furthermore, Defendant Galassi states in his affidavit that he did not reject Fuller's work release application solely on the basis of Fuller's sex offense conviction; rather, he also considered Fuller's convictions of unlawful restraint and intimidation.

Plaintiff Hollgarth's Graham Correctional Center screening form notes that Hollgarth is a "recidivist sexual abuse offender." The thrust of the ARB's findings, however, was that Hollgarth was properly denied admission into the work release program because he had only a "short length of time left in the Department['s] custody and thus could not profit from the program."

> The Logan Correctional Center was contacted concerning the food services and weldinq programs. Since programs are college courses, before an inmate enters them, they must apply for a grant and then they are considered for the program. The complete program is a six-month program. There are certificates for partial completion, but the minimum amount of time is approximately four and one-half months.
>
> ... Based on a review of all available information, the Panel recommends the inmate's grievance be denied due to the short length of time in the Department. According to his security classification he is appropriately placed. (*See* Minutes of ARB Meeting of September 29, 1986.)

Plaintiffs allege that because their crimes do not fall within the automatic exclusions from the work release program of Ill.Admin.Code, Title XX, § 455.30 (1984)

by definition, they should not have been denied participation in the work release program. That decision, however, is clearly within the discretion of internal prison management. Section 455.30 of the Department Rules provides as follows: "To be considered for placement, the person must '[n]ot be serving a sentence for murder, any Class X felony, attempted murder, voluntary manslaughter, aggravated kidnapping, kidnapping, indecent liberties with a child or arson.'" While Class X offenders are automatically barred from consideration for the pre-release program (except in certain, special situations outlined in the Department Rules), it does not follow that all other inmates who meet the basic criteria are automatically eligible. The rationale behind § 455.30 is obviously to ensure the safety of the community. Even if the prospective work release candidate is not convicted of a serious crime listed in § 455.30, prison officials must still carefully screen the applicant to determine whether he poses a significant risk to the community.

▉ Even assuming that sex offenders were members of a suspect class, prison officials' understandable reluctance to allow those inmates free movement in the community without supervision passes strict judicial scrutiny. The same public protection policy applies to sex offenders as to Class X felons. *See Finley,* 542 F.2d at 251 (holding that an Alabama law requiring sex offenders to obtain special board certification in order to be eligible for work release did not state an equal protection claim). In any event, Plaintiffs have failed to submit any proof to support their legal conclusion that Defendants discriminate against all sex offenders other than their list of non-sex offender inmates whom were granted work release. Defendants, on the other hand, have affirmatively stated that they consider each work release application on an individual basis and do not automatically exclude sex offenders from the pre-release program.[2] The appli-

---

2. In fact, the stated reason for Plaintiff Hollgarth's denial was that Hollgarth's imminent release would not have allowed him to success- fully complete his desired school course work. No reference was made to Hollgarth's criminal

cations of both Plaintiffs support a denial of pre-release.

Like Plaintiffs' allegation that a disproportionate number of sex offenders are denied admission into the work release program, their allegation that others with similar or worse criminal histories have been granted work release privileges does not raise a genuine issue as to intentional discrimination against them. In *Martino v. Gard*, 526 F.Supp. 958 (E.D.N.Y.1981), plaintiff alleged that the release committee had violated his equal protection rights in granting his brother's application for temporary release and denying his, when both were serving equal sentences as participants in the same offense and both maintained equally excellent disciplinary and work records. The court dismissed the plaintiff's complaint, holding that it would not intrude upon the committee's decision-making absent allegations of consistent or pattern discrimination, because the state legislature had granted the committee broad discretion in selecting applicants for the programs and subjective factors inevitably entered into such a selection process. Here, Plaintiffs have made such an allegation of repeated discrimination; however, the mere allegation, while sufficient to defeat a motion for dismissal, is not sufficient to defeat summary judgment.

The Court has already determined as a matter of law that the statutory and regulatory program of determining eligibility for work release is valid because it is rationally related to a permissible state goal. The fact that the law may not achieve a perfect result in granting work release to a well deserving or qualified inmate does not create an equal protection problem. In determining eligibility for work release, prison officials must weigh a multitude of facts relevant to the ultimate determination of an inmate's potential for rehabilitation and his risk to society. The imprecise nature of such a decision-making process virtually guarantees that mistakes and inconsistencies will occur and that some prisoners who seem similar will receive different treatment. "This does not mean, however, that

every decision by prison officials should be subject to judicial review or that the courts rather than experienced administrators should write prison regulations." *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), *cited in United States ex rel. Miller v. Twomey*, 479 F.2d 701, 713 (7th Cir.1973), *cert. denied*, 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974).

Plaintiffs have failed to raise any factual issues indicating their ability to show that Defendants based their rejection of Plaintiffs upon factors other than those encompassed by the departmental rules. Defendants' stated reason for denying Plaintiffs' work release were the nature of their crimes (repeated sexual assaults), as well as Plaintiff Hollgarth's inability to profit from the program. Plaintiffs' respective applications underwent several levels of review, and the decision makers at each stage agreed that they were not appropriate candidates for the pre-release program. Those decisions came within the discretion granted under the work release rules, because an inmate's criminal history certainly has some bearing upon the risk he poses to society, and an inmate's ability to complete desired course work is relevant to the program's benefit to the candidate. The Court will not become involved in evaluating the soundness of the decisions because it has determined that the statute and regulations which establish this decision-making authority are valid and have been properly applied. Hence, summary judgment for the defendants is appropriate.

In conclusion, the Court finds no triable issue regarding Defendants' alleged violation of Plaintiffs' constitutional rights. The Court finds that as a matter of law, the statutes and departmental rules governing placement in the work release program are constitutionally valid. The Court also finds that the consideration of an inmate's criminal history, including sexual offenses, is permissible in determining whether the inmate poses a "risk to society" and is thus not a suitable candidate for pre-release. Plaintiffs have not set forth

sexual history by those reviewing Hollgarth's application.

facts from which one could reasonably infer that Defendants intentionally discriminated against Plaintiffs or arbitrarily or capriciously rejected them. Consequently, Defendants are entitled to judgment as a matter of law.

*Ergo,* Defendants' motion for summary judgment is ALLOWED. In light of the Court's order entering judgment for Defendants and dismissing this action, the other outstanding motions must be DENIED as moot. Accordingly, Plaintiffs' motions for a hearing for injunctive relief and for a jury trial are DENIED. Defendants' motion for a stay of discovery is also DENIED as moot.

Judgment for Defendants.

Case CLOSED.