920 F.2d 935
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Eldridge LOVELACE, Plaintiff/Appellant,
v.
Richard B. GRAMLEY and Michael P. Lane, Defendants/Appellees.
 No. 88-3118.
 United States Court of Appeals, Seventh Circuit.
 Submitted Dec. 7, 1990.*
Decided Dec. 12, 1990.
 
 Before BAUER, Chief Judge, and CUMMINGS and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 While incarcerated at the East Moline Correctional Center[1] following his conviction of aggravated arson, arson, and solicitation, Eldridge Lovelace applied to participate in the prison's work release program. He filed a civil rights action pursuant to 42 U.S.C. Sec. 1983 against the defendants alleging a violation of his due process and equal protection rights in connection with the denial of his application to participate in the work release program. He appeals the grant of summary judgment in favor of the defendants on the ground that the district court did not provide him with an opportunity to prove his allegations. We disagree. After discovery his counsel responded to the summary judgment motion.
 
 
 2
 For this reason and for the reasons stated in the district court's opinion, we AFFIRM.[2]
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 3
 ELDRIDGE LOVELACE, Plaintiff,
 
 
 4
 vs.
 
 
 5
 RICHARD B. GRAMLEY, et al., Defendants.
 
 No. 85-4215
 Sept. 20, 1988
 ORDER
 
 6
 The plaintiff, Eldridge Lovelace, a former inmate of the East Moline Correctional Center, has brought this civil rights action pursuant to 42 U.S.C. Sec. 1983. The plaintiff alleges in his complaint that he was denied placement in the Department of Corrections work release program in violation of his constitutional right to equal protection, and has named as defendants EMCC Warden Richard Gramley and IDOC Director Michael Lane. More specifically, the plaintiff claims that he was eligible for pre-release placement, but that his application was denied "without any rationale." The plaintiff further alleges that acceptance of work release candidates is arbitrary and that white inmates have a much greater chance of being granted work release in Illinois than do similarly situated black inmates. This matter is currently before the court for consideration of the defendants' motion for summary judgment (Docket # 24).
 
 
 7
 First, the court must address the plaintiff's motions for a change of venue (Docket ## 29 and 32). Venue for federal, civil rights actions brought under 42 U.S.C. Sec. 1983 is governed by 28 U.S.C. Sec. 1391(b). According to that statute, such actions may be brought only in the judicial district where all the defendants reside or in which the claim arose, except as otherwise provided by law.
 
 
 8
 The plaintiff wishes to have this case transferred to the Northern District because he is now a Chicago resident and because he feels that this judge is prejudiced against the plaintiff. As explained to the plaintiff in the court's order of July 29, 1988, this court is aware of no reason why it would not or could not be fair and impartial. Furthermore, the considerations behind the venue statutes do not support a change in forum based on the circumstances in the case at bar.
 
 
 9
 The plaintiff has named two defendants in this action: Richard Gramley, who at the time of the filing was a resident of Rock Island County, and Michael P. Lane, who resides in Springfield. Both locations are situated within the Central District of Illinois. Similarly, the plaintiff's claim arises out of treatment he received at the East Moline Correctional Center, which is also found in Rock Island County and the Central District of Illinois. Venue is thus proper in the Central District of Illinois according to 28 U.S.C. Sec. 1391(b).
 
 
 10
 The plaintiff's move to Chicago, Illinois, does not justify a change of venue under 28 U.S.C. Sec. 1404. Under that provision, a district court, for the convenience of parties and in the interest of justice, may transfer any civil action to any other district or division where it might have been brought. 28 U.S.C. Sec. 1404(a). This action could not have been brought in the Northern District for the reasons discussed above. Moreover, the court finds that the transfer to another district would place an undue burden upon the defendants. The distance the defendants would be required to travel to defend this action mitigates against a transfer of venue. Additionally, the defendants' motion for summary judgment in this matter has been fully briefed for over a year. The amount of time it would take a new court to become familiar with this case would result in needless delay, as well as a waste of the court's and the parties' resources. Consequently, the plaintiff's motion for a change of venue is denied.
 
 
 11
 Procedural matters settled, the court may now consider the defendants' substantive motion for summary judgment. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Herman v. National Broadcasting Co., Inc., 744 F.2d 604, 607 (7th Cir.1984), cert. denied, 470 U.S. 1028 (1985). "[I]n determining whether factual issues exist, a reviewing court must view all the evidence in the light most favorable to the non-moving party." Black v. Henry Pratt Co., 778 F.2d 1278, 1281 (7th Cir.1985). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.
 
 
 12
 The plaintiff claims that the defendants violated his constitutional rights by refusing to admit the plaintiff into the Department of Corrections Work Release Program. He argues that the defendants' decision violated the plaintiff's right to equal protection by allowing other inmates convicted of equally or more serious crimes, particularly white inmates, to participate in the work release program while denying the plaintiff's application. However, because the plaintiff has not set forth specific facts showing that there is a genuine, triable issue, the defendants' motion for summary judgment will be granted. See Fed.R.Civ.P. 56(e); Valentine v. Joliet T.P. High Schoold Dist. No. 204, 802 F.2d 981, 986-87 (7th Cir.1986). See also Celotex Corp., 477 U.S. 317, 322 (1986) (summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case).
 
 
 13
 In January of 1983, the plaintiff was convicted of aggravated arson, arson, and solicitation. In May of 1985, the plaintiff, who is black, applied for the Department of Corrections work release program. On May 20, 1985, the plaintiff was denied placement in the work release program due to the "serious nature of his offense." The plaintiff subsequently filed a grievance regarding the denial with East Moline's Institutional Inquiry Board. The Board upheld the Assignment Committee's decision; the plaintiff then appealed to the Administrative Review Board, which also affirmed the plaintiff's denial as an inappropriate candidate for community correctional center placement.
 
 
 14
 The plaintiff apparently maintains that the defendants' stated reason for denying the plaintiff placement in the work release program was merely a cloak to justify an arbitrary decision. The plaintiff maintains that the program lacks any salient factors for determining which inmates are most suited for work release. The plaintiff also claims that the defendants' actions in denying him work release violated his right to equal protection in two respects: (1) other inmates with similar or worse criminal histories than the plaintiff have been granted placement in the work release program; (2) in terms of percentages, white inmates are much more likely to be granted work release.
 
 
 15
 There is no constitutional right to work in prison. Garza v. Miller, 688 F.2d 480, 485 (7th Cir.1982), cert. denied, 459 U.S. 1150 (1983). Moreover, the Constitution does not require prison authorities to provide educational, rehabilitative, or vocational programs, in the absence of conditions that rise to a violation of the Eighth Amendment. Id. Various circuits have accordingly held that an inmate has no constitutional right to enter a discretionary work release program. See, e.g., Winsett v. McGinnis, 617 F.2d 996, 1005 (3rd Cir.1980), cert. denied, 449 U.S. 1093 (1981); Finley v. Staton, 542 F.2d 250, 251 (5th Cir.1976).
 
 
 16
 Because the decision whether to grant or deny work release privileges is discretionary, the Due Process Clause does not apply to the plaintiff's parole denial. To obtain a protectable right, a person must have more than an abstract need, desire, or unilateral expectation of the interest at stake. He must, instead, have a legitimate claim of entitlement to it. Greenholz v. Nebraska Penal Inmates, 442 U.S. 1, 7 (1979), citing Board of Regents v. Roth, 408 U.S. 564, 570-71 (1971). That the state holds out the possibility of work release privileges provides no more than a mere hope that the benefit will be obtained. The inmate's hope of discretionary pre-release is not protected by the Fourteenth Amendment. Thus, any rights the plaintiff claims to possess with regard to work release must derive from state law.
 
 
 17
 Illinois Revised Statute, ch. 38, p 1003-13-1 (1985) authorizes the Department of Corrections to establish a work release program. Under those statutory provisions, the Department of Corrections has formulated rules by which it administers the work release program. Illinois Administrative Code Title XX, Sec. 455.30 (1984), sets forth the eligibility criteria an inmate must meet before he may be considered for placement in a community correctional center (work release center). In addition to those criteria, Sec. 455.40 states that the appropriate corrections personnel shall review work release applications and "shall approve or deny the placement."
 
 
 18
 This statutory scheme does not grant eligible inmates an automatic right to work release; rather, that decision lies within the discretion of those charged with granting work release assignments. The statutory language clearly authorizes prison officials to use their judgment:
 
 
 19
 The Department may allow a committed person to leave an institution or facility during reasonable hours where such release would assist the individual's rehabilitation and would not cause undue risk to the public.....
 
 
 20
 Ill.Rev.Stat. ch. 38, p 1003-13-2 (1985) (emphasis added).
 
 
 21
 The legislative history of the work release statute further establishes the intent to provide the department widely discretionary decision-making power when making work release program assignments:
 
 
 22
 The section adopts the position that the Department which has general responsibility for program assignments, must be able to make work and day release decisions on the basis of its knowledge of the person involved.
 
 
 23
 Ill.Stat.Ann. ch. 38, p 1003-13-2 (Smith-Hurd 1982) (council commentary). The courts have accordingly shown great deference to prison officials making such discretionary decisions regarding work release assignments. See, e.g., Greenholtz, 442 U.S. at 7, 16; Watts v. Morgan, 572 F.Supp. 1385, 1388 (N.D.Ill.1983).
 
 
 24
 The discretion given to prison officials in determining individuals' fitness for placement in the work release program does not make the program or its application constitutionally infirm. The Department of Corrections' rules list several minimum eligibility criteria for consideration for placement in the work release program. See Ill.Admin.Code Title XX, Sec. 455.30 (1984). The statute authorizing the work release program, furthermore, grants prison officials the discretion to admit an inmate in the work release program "where such release would assist the individual's rehabilitation and would not cause undue risk to the public...." Ill.Rev.Stat. ch. 38, p 1003-13-1 (1985). These regulations place a limitation on prison officials' permissible use of discretion, ensuring that prison officials act in accordance with the purpose of the program. The court thus rejects the plaintiff's argument that there are no "salient factors" used in determining a candidate's suitability for the work release program.
 
 
 25
 The plaintiff also makes the equal protection claim that the defendants denied the plaintiff's work release request on the basis of race. Although there is not a constitutional right to work release, prison officials may not distribute benefits (or burdens) on the basis of impermissible factors such as race or religion. See Madyun v. Thompson, 657 F.2d 868, 874 (7th Cir.1981). Nevertheless, the plaintiff has failed to make a prima facie case that the defendants denied his application for work release on the basis of the plaintiff's race.
 
 
 26
 At three levels of review, prison officials found that the plaintiff was not an appropriate candidate for work release placement, principally due to the serious nature of his offense. Section 455.30(a)(1) of the Illinois Department of Corrections Rules expressly excludes those serving sentences for arson and other serious crimes from work release placement. Section 455.50, which governs placement exceptions, does grant the Director limited discretion to approve of such placement; however, this court will not attempt to second guess the defendants' determination that the plaintiff was unsuitable for special consideration. As discussed above, the courts must accord great deference to prison official's discretionary decisions.
 
 
 27
 The plaintiff has failed to provide the court with sufficient facts to show that there is a genuine issue that the defendants were racially motivated in denying the plaintiff work release. Where, as here, a statute is found to be neutral on its face, the court must then consider whether the allegedly adverse affect on a given group reflects invidious discrimination. Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 273-74. Even where the legislation may have a foreseeably adverse impact on a certain class, "discriminatory purpose" implies more than intent as volition or intent as awareness of consequences; it implies that the decision maker elected to or reaffirmed a particular course of action at least in part "because of," not merely "inspite of," its adverse affects upon an identifiable group. Id. at 278-80.
 
 
 28
 The plaintiff states that statistical information in the defendants' control, purportedly undiscoverable due to the court's protective order of August 7, 1986, would indicate that a disproportionate percentage of inmates allowed into the Department of Corrections work release program are white. At his own deposition, the plaintiff admitted that he bases his perception of discrimination upon personal observation, rather than written data. In any case, even if the plaintiff could present statistical information to indicate that more white inmates are granted work release than black inmates, such a showing would be insufficient, in itself, to show discriminatory intent. The Department of Corrections' facially neutral work release procedures will not be held unconstitutional solely because they have a racially disproportionate impact. Washington v. Davis, 426 U.S. 229, 242. The defendants have affirmatively shown that, based upon all of the relevant factors which go into such a decision, the plaintiff was not considered an appropriate candidate for pre-release. The plaintiff's allegation that fewer black inmates are chosen for the work release program is insufficient to establish an equal protection claim. Even had the plaintiff submitted proof in support of his contention, such statistics would not account for the personal histories of those who were granted or denied work release privileges.
 
 
 29
 The plaintiff has similarly failed to establish an equal protection claim on the basis that other inmates with similar or worse records than the plaintiff's were granted work release privileges. Again, a plaintiff must show that the discrimination against him was intentional or deliberate. Shango v. Jurich, 681 F.2d 1091, 1104 (7th Cir.1982). Inconsistency in the operation of a prison may not, in itself, constitute a denial of equal protection. Id. The Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers. Id. Like the plaintiff's allegation that a disproportionate number of blacks are denied admittance into the work release program, the plaintiff's allegation that others with similar or worse criminal histories have been granted work release privileges does not raise a genuine issue as to intentional discrimination against him.
 
 
 30
 The facts of this case can be compared to the fact situation in Martino v. Gard, 526 F.Supp. 958 (E.D.N.Y.1981). In that case, the plaintiff alleged that the release committee had violated his equal protection rights in granting his brother's application for temporary release and denying his, when both were serving equal sentences as participants in the same offense and both maintained equally excellent disciplinary and work records. The court dismissed the plaintiff's complaint in that matter, holding that it would not intrude upon the committee's decision making absent allegations of consistent or pattern discrimination, because the state legislature had granted the committee broad discretion in selecting applicants for the programs and subjective factors inevitably entered into such a selection process. Here, the plaintiff has made such an allegation of ongoing discrimination; however, the mere allegation, while sufficient to defeat a motion for dismissal, is not sufficient to defeat summary judgment.
 
 
 31
 The court has already determined as a matter of law that the statutory and regulatory program of determining eligibility for work release is valid because it is rationally related to a permissible state goal, i.e., balancing an inmate's likelihood for rehabilitation against his potential to harm the public. The fact that the law may not achieve a perfect result in granting work release to a well deserving or qualified inmate does not create an equal protection problem. In determining eligibility for work release, prison officials must weigh a multitude of facts relevant to the ultimate determination of an inmate's potential for success in the program and his risk to society. The imprecise nature of such a decision making process virtually guarantees that mistakes and inconsistencies will occur and that some prisoners who seem similar will receive different treatment. "This does not mean, however, that every decision by prison officials should be subject to judicial review or that the courts rather than experienced administrators should write prison regulations." Morrissey v. Brewer, 408 U.S. 471 (1972), cited in United States ex rel. Miller v. Twomey, 479 F.2d 701, 713 (7th Cir.1973), cert. denied, 414 U.S. 1146 (1974).
 
 
 32
 The plaintiff has failed to raise any factual issues indicating his ability to show that the defendants based their rejection of the plaintiff upon factors other than those encompassed by the departmental rules. The defendants' stated reasons for denying the plaintiff work release placement was the serious nature of the crime of which the plaintiff had been convicted. The plaintiff's application underwent several levels of review, and the decision makers at each stage agreed that the plaintiff was not an appropriate candidate for the pre-release program. Those decisions came within the discretion granted under the work release rules, because an inmate's criminal history certainly has some bearing upon the risk he poses to society. This court will not become involved in evaluating the soundness of that decision because the court has determined that the statute and regulations which establish this decision making authority are valid and appear to have been properly applied. The plaintiff has not submitted any evidence which suggests that the department's decision was based upon anything other than the criteria set forth in the statute. An adverse party may not rest upon the mere allegations or denials of his complaint, but rather his response must set forth specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Hence, summary judgment for the defendants is appropriate.
 
 
 33
 In conclusion, the court finds no triable issue regarding the defendants' alleged violation of the plaintiff's constitutional rights. The court finds that as a matter of law, the statutes and departmental rules governing placement in the work release program are constitutionally valid. The court also finds that the plaintiff has failed to raise any genuine issue of fact countering the defendants' assertion that they denied the plaintiff admission into the work release program because of his serious criminal history. The plaintiff has not set forth facts raising a triable issue that the defendants intentionally discriminated against the plaintiff or arbitrarily and capriciously rejected his work release application. Consequently, the defendants are entitled to judgment as a matter of law.
 
 
 34
 IT IS THEREFORE ORDERED that the plaintiff's motions for a change of venue (Docket ## 29 and 32) are denied.
 
 
 35
 IT IS FURTHER ORDERED that the defendants' motion for summary judgment (Docket # 24) is allowed. The Clerk of the court is directed to enter judgment in favor of the defendants and against the plaintiff in the above-captioned matter. Cause stricken and case dismissed.
 
 
 36
 ENTER this 20th day of September, 1988.
 
 
 37
 /s/ MICHAEL MIHM
 
 United States District Judge
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Rule 34(a), Fed.R.App.P.; Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 Lovelace has since been released from custody
 
 
 [2]
 The district court did not discuss the issue of immunity raised by the defendants. Because we agree that there was no constitutional violation, it is not necessary to address the issue of immunity